

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2006

# Lucas v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3973

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Lucas v. Comm Social Security" (2006). *2006 Decisions.* Paper 915.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/915

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3973

———

WILBUR LUCAS,

Appellant

v.

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:04-cv-01269)
District Court Judge:  Honorable Arthur J. Schwab

———

Argued May 16, 2006

Before: RENDELL, VAN ANTWERPEN and WEIS, Circuit Judges.

(Filed:  June 12, 2006)

Karl E. Osterhout, Esq.
Edgewood Towne Center Offices
Pittsburgh, PA

Thomas D. Sutton, Esq. (argued)
Leventhal Sutton & Gornstein
Trevose, PA
            Counsel for Appellant

David F. Chermol, Esq. (argued)
Thomas C. Buchanan, Esq.
Social Security Administration
Philadelphia, PA
            Counsel for Appellee

OPINION OF THE COURT

VAN ANTWERPEN, <u>Circuit Judge</u>.

Wilbur Lucas challenges the District Court's grant of summary judgment to the Commissioner of the Social Security Administration ("SSA") affirming the Appeals Council's denial of benefits. We will reverse and remand because the ALJ failed to consider whether Lucas's age was "borderline" under 20 C.F.R. § 404.1563(b), and because the ALJ inaccurately depicted Lucas's impairment to the vocational expert.

I.

Because we write only for the parties, our recapitulation of the facts is limited to those necessary to adjudication. Lucas, formerly an insurance salesman, has not worked for some time. On June 10, 2002, several years after denial of an initial claim for Social Security disability benefits, he filed a second application, at issue here, in which he claimed to suffer from carpal tunnel syndrome, diabetes mellitus (type II), depression, hypertension, high cholesterol, and sleep apnea. This application was also denied. He appealed, and received a hearing before an ALJ on February 3, 2004. Applying the now-familiar five-step analysis, the ALJ concluded that Lucas was not engaged in substantial gainful activity, and that his impairments were adequately severe; however, they did not "meet or equal" any listed impairment. The ALJ then determined whether Lucas could return to his past relevant work. Finding that he could not, the ALJ went on to determine whether Lucas could perform a significant number of other jobs in the national economy.

Applying the Medical-Vocational guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), the ALJ concluded that Lucas could perform sedentary work, and some jobs that required light exertion – at least prior to his 55th birthday.

The ALJ issued a "partially favorable" decision on February 26, 2004, finding that prior to reaching age 55 on July 15, 2003, Lucas was an "individual closely approaching advanced age," and not disabled under the Grids. The ALJ concluded, however, that at age 55, Lucas became an "individual of advanced age," and in light of his physical and psychiatric limitations, was disabled under another Grid provision.

The Appeals Council exercised "own motion review" pursuant to 20 C.F.R. § 404.969, and issued a June 22, 2004 decision finding that Lucas ceased to have insured status as of March 31, 2003 because after that date, he lacked the requisite 20 quarters of coverage out of the preceding 40 quarters. See 42 U.S.C. § 416(i)(3)(B)(i). As a result, Lucas was uninsured and ineligible for disability benefits predicated on disability commencing with his 55th birthday on July 15, 2003, 106 days after his coverage lapsed. The parties do not dispute these conclusions. Lucas appealed to the United States District Court for the Western District of Pennsylvania, which considered the parties' cross filings for summary judgment. On July 12, 2005, the District Court granted summary judgment to the government, affirming the Appeals Council. This appeal timely followed.

II.

The District Court had jurisdiction under 42 U.S.C. § 405(g); we have jurisdiction under 28 U.S.C. § 1291. We review the decision of the District Court de novo, and apply the same standard it did, determining whether substantial evidence supported the

-3-

Commissioner's decision. Welch v. Heckler, 808 F.2d 264, 266 (3d Cir. 1986).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994)

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

III.

A.

Lucas argues that the SSA failed to analyze whether he was "borderline" with

respect to his age under 20 C.F.R. § 404.1563(b), and as a result, incorrectly denied him

the possibility of "individual of advanced age" status prior to his 55th birthday.[1] We

agree.

Where an individual's circumstances are not adequately described by the Grids'

attributes of residual functional capacity ("RFC"), age, education, and skills, the SSA

must decide the case "on the basis of the principles and definitions in the regulations,

giving consideration to the rules for specific case situations in [the Grids]." 20 C.F.R.

Part 404, Appendix 2 § 200.00(d); see Jesurum v. Secretary, 48 F.3d 114, 120-21 (3d Cir.

1995). On their face, the Grids make bright-line distinctions by age, but the SSA's

---

[1] At oral argument, the government debuted its contention that Lucas waived the issue of his borderline age by not raising it at the agency level. We reject this late attempt for two reasons. First, "[a]n issue is waived unless a party raises it in its opening brief"; here, quite simply, the government waived its waiver argument by failing to brief it. Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler, 26 F.3d 375 (3d Cir. 1994) (citing Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991) (plurality) (Becker, J.)). Second, the government's exhaustion argument is wrong. The Supreme Court has found issue exhaustion unnecessary at the Appeals Council level, Sims v. Apfel, 530 U.S. 103, 112 (2000) (plurality), and the borderline age issue entered the present case only when the Appeals Council denied benefits.

regulation, 20 C.F.R. § 404.1563(b), promises that where applicants are "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [they] are disabled, [SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case."

In such "borderline" age cases, the SSA cannot mechanically apply the Grids' age categories, but must "give full consideration to all relevant facts . . . ." Kane v. Heckler, 776 F.2d 1130, 1134 (3d Cir. 1985) ("Where a procrustean application of the Grids results in a case that, but for the passage of a few days, would be decided differently, such an application would appear to be inappropriate."); see Heckler v. Campbell, 461 U.S. 458, 462 (1983) (validity of Grids relies on ability to make individualized determinations). The relevant question is whether the individual's age would allow him or her to adapt to a new job. See 20 C.F.R. § 404.1563(c), (d), (e) (age as measure to ability to adapt to other work); Daniels v. Apfel, 154 F.3d 1129, 1135-36 n.9 (10th Cir. 1998) (noting open question of what evidence is relevant to question of adaptability).

Relying on the testimony of a vocational expert ("VE"), the ALJ found that prior to age 55, Lucas's RFC enabled him to perform a significant number of jobs in the national economy classed as "light work." The relevant Grid rule, 202.14, holds that individuals closely approaching advanced age (50 to 54) are not disabled where they have (1) education beyond high school that "does not provide for direct entry into skilled work," and (2) previous skilled work experience, but such skills were non-transferable. Looking at Lucas's chronological age along with his background, Rule 202.14 indicated a

finding of no disability prior to his 55th birthday.

The ALJ did find, however, that Lucas was disabled as of July 15, 2003 because he fell into a new Grid rule when he turned 55 on that date. Rule 202.06 is identical to Rule 202.14, except that it applies where the individual is of "advanced age"; that is, 55 or older, and dictates that such an individual *is* disabled. The ALJ concluded that as of his 55th birthday, Lucas was disabled under Rule 202.06. On review, the Appeals Council reversed because Lucas lost insured status on March 31, 2003, three and a half months before his 55th birthday.

Lucas argues that the Appeals Council should have considered him borderline with respect to age under to 20 C.F.R. § 404.1563(b), and determined whether at some point *prior* to his 55th birthday he was disabled under 202.06. The government and the District Court conflate the necessary analysis under Rule 202.14 – whether Lucas could perform a significant number of light work jobs in the national economy – with the inquiry mandated by § 404.1563(b) into whether Rule 202.06 should have applied to him at some point in the months before his 55th birthday on the basis that his ability to adjust to new work was more like that of a person of advanced age than one closely approaching it.[2] See Kane, 776 F.2d at 1134 (discussing consideration of age under 20 C.F.R. § 404.1563).

Even if factually related, the issue of ability to adjust as an adjunct of age is legally

---

[2] At oral argument, the government argued that the Grids as applied to Lucas and others in similar circumstances are obsolete and result in overly-generous findings of disability. We reject this contention as a basis for denying relief to Lucas because it is completely outside our purview. If the government wishes to narrow the applicability of the Grids, it must accomplish it through administrative action, not the courts.

and analytically distinct from the inquiry into whether one can perform a significant number of "light" jobs in the national economy.  See id. (noting significance of inquiry into effect of claimants' age on their ability to adjust to other work).  That Lucas was approaching age 55 raises two closely related questions which the SSA must answer in the first instance.  First, it must determine whether the 106-day period between age 54 3/4 on March 31, 2003, and age 55 on July 15, 2003 is "within a few days to a few months of reaching an older age category" under § 404.1563(b).  Second, if the SSA finds that Lucas's is a borderline case, it must determine whether his ability to adjust on March 31, 2003 was more like that of an "individual closely approaching advanced age" (50 to 54 years old), or an "individual of advanced age" (55 or over).  Our precedent in Kane is clear in requiring as much:

> According to the regulatory description of the age factor, the important difference between those of advanced age and those closely approaching advanced age is that the age of persons in the former category "significantly affects a person's ability to do substantial gainful activity," while the age of those in the latter category merely "seriously affect[s their] ability to adjust to a significant number of jobs in the national economy."

Id. at 1134 (quoting 20 C.F.R. § 404.1563; modification in original).  See also Daniels, 154 F.3d at 1136 ("The Commissioner must determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the grids.").

Because the record does not contain factual findings relevant to the § 404.1563(b) inquiry into whether Lucas was entitled to consideration under Rule 202.06 as a borderline age case, we conclude that the SSA's decision that he is ineligible for benefits

under that rule *prior* to his 55th birthday, July 15, 2003, is unsupported by substantial evidence.  We will reverse on this basis .

B.

Lucas next argues that the ALJ's substitution of "difficult" for "poor/none" in characterizing a hypothetical employee's ability to manage work-related stress in his question to the VE inaccurately depicted Lucas's impairment.[3]  We agree.  The ALJ's hypothetical misstated the evidence of Lucas's ability to tolerate work-related stress by referring to an individual who would "find it difficult to deal with work stress," rather than more closely depicting the finding of the consultative examiner that his ability was "Poor/None."  The ALJ gave substantial weight to the report containing this finding.

"A  hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  A hypothetical must be accurate, or the VE's response will not afford substantial evidence to support the disability determination.  See, e.g., Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984) (hypotheticals posed to VE must accurately reflect mental and physical impairments, otherwise response cannot be considered).

---

[3] The government intimated a failure-to-exhaust argument in its brief, stating that Lucas "should not be permitted to 'cry foul' at this late date." However, it failed to perform any legal analysis of the issue, and stepped away from the contention altogether at oral argument.  We note without opining on the issue that the government seems to have stumbled upon – and abandoned – the open question as to whether issue exhaustion is necessary at the ALJ level.  See, e.g., Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) ("The impact of a no-waiver approach . . . at the ALJ level . . . could cause havoc, severely undermining the administrative process.").

Here, the ALJ did not explain why he used the term "difficult" instead of a depiction that reflects "Poor/None." The government reasons that "difficult" is the "functional equivalent" of "Poor/None." But by their plain meanings, "difficult" and "poor" or "none" simply are not the same. "Poor" denotes a serious lack of ability, and "none" implies its absence. "Difficult," on the other hand, conveys substantial ability, even if the ability is significantly burdened. Accordingly, the ALJ's inapt wording of the hypothetical led to a response from the VE that does not afford substantial evidence for the disability determination. We reverse on this basis as well.

## C.

Lucas finally argues, unavailingly, that his own testimony establishes his disability, and because the ALJ accepted it as "generally credible" and consistent with the testimony of experts in the case, the decision finding him not disabled prior to his 55th birthday was logically inconsistent. Lucas relies on Schaudeck v. Commissioner, 181 F.3d 429, 433 (3d Cir. 1999) for the proposition that the claimant's testimony is entitled to great weight where it is consistent with competent medical evidence. However, Lucas's testimony is not so damning to the ALJ's conclusion as he contends. Rather, it depicts an individual who has *some* RFC, and it is plain that the ALJ took it into account with the rest of the evidence in the case, rather than impermissibly disregarding it.

## IV.

For the foregoing reasons, we will reverse the Order of the District Court and remand with instructions to remand the case to the agency.

-9-