# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
February 21, 2020

Lyle W. Cayce
Clerk

No. 18-11390

TAMMY RAYE SCHOFIELD,

      Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of Social Security,

      Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before ELROD, GRAVES, and OLDHAM, Circuit Judges.[*]

ANDREW S. OLDHAM, Circuit Judge:

The Social Security Administration ("SSA") denied Tammy Raye Schofield's application for disability benefits. The SSA based its decision on a highly reticulated, multi-part web of administrative regulations, a multi-page chart called "The Matrix," and subregulatory-guidance documents called the "POMS" and the "HALLEX." Within this administrative-state labyrinth lies many a trap for the unwary. But in this case, the SSA ensnared itself. We reverse.

---

[*] Judge Graves concurs in the judgment.

No. 18-11390

## I.

## A.

An applicant for disability benefits faces a long and winding road to get them. The relevant subpart of the Code of Federal Regulations spans over one hundred sections, two dense appendices, and several hundred pages of text. *See* 20 C.F.R. pt. 404, subpt. P, §§ 404.1501–1599 & app. 1–2. But here's a highly condensed roadmap.

The person seeking disability benefits first applies in writing to the SSA. If the SSA denies the application, the person has 60 days to seek reconsideration. *See* 42 U.S.C. § 405(b)(1). If the SSA denies reconsideration, the applicant can request a hearing before an administrative law judge ("ALJ").

The ALJ then performs a "five-step sequential evaluation process" to determine whether the applicant is disabled. 20 C.F.R. § 404.1520(a)(4); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The steps are as follows:

1. At step one, the ALJ considers the applicant's "work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i). A person performing "substantial gainful activity" is not disabled. *Id.* § 404.1520(b).

2. At step two, the ALJ considers "the medical severity of [the applicant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). A person who does not have a "severe impairment" is not disabled. *Id.* § 404.1520(c).

3. At step three, the ALJ considers whether the person's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). A person who "meets or equals" the enumerated impairments is disabled. *Id.* § 404.1520(d).

4. At step four, the ALJ considers whether the person is capable of performing the work she has done in the past. *Id.* § 404.1520(a)(4)(iv). If she is so capable, she is not disabled. *Id.* § 404.1520(f).

5. At step five, the ALJ considers the applicant's "residual functional capacity and . . . age, education, and work experience to see if [the applicant] can make an adjustment to other work." *Id.*

No. 18-11390

§ 404.1520(a)(4)(v). If the person can adjust to other work, she's not disabled; if she cannot adjust, she is disabled. *Id.* § 404.1520(g).

This case concerns Step Five. At Step Five, ALJs use the Medical-Vocational Guidelines, which contain a number of rules in a grid-like matrix. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). To figure out which rule applies, the ALJ enters into the matrix the applicant's residual functional capacity, age category, education level, and previous work experience. The matrix, in turn, identifies the applicable rule, and that rule directs a disability finding. Changing any one of these inputs can change what the matrix requires. For instance, if you change the age category and leave the other inputs unchanged, that will sometimes direct a different answer regarding whether the applicant is disabled.

But there is a way out of the matrix. The SSA will sometimes choose not to use a person's actual age in what it calls a "borderline situation." 20 C.F.R. § 404.1563(b). A borderline situation occurs when an applicant is "within a few days to a few months" of an older age category. *Ibid.* You might reasonably wonder how many months or days are "a few." The regulation does not say.[†] But in cases where Section 404.1563(b) applies, the ALJ will not "mechanically" use the applicant's actual age and will instead "consider whether to use the older age category after evaluating the overall impact of all the factors . . . ." *Ibid.*

But that's not the only way out of the matrix. If the ALJ determines that one of the matrix's rules do not apply, the ALJ can perform Step Five using the totality of the circumstances. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a)

---

[†] At some point after the ALJ's decision in this case, the SSA issued a subregulatory-guidance document called Program Operations Manual System ("POMS") DI 25015.006. Subpart B of POMS DI 25015.006 specifies that "a few days to a few months" should be interpreted to mean "a period not to exceed six months." *See* POMS DI 25015.006, *Borderline Age*, https://secure.ssa.gov/poms.nsf/lnx/0425015006 (effective starting July 6, 2017).

No. 18-11390

("In any instance where a rule does not apply, full consideration must be given to all of the relevant facts . . . ."). In addition, ALJs sometimes rely on a vocational expert's testimony about "job requirements and working conditions" because an expert "is familiar with the specific requirements of a particular occupation, including . . . the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (per curiam) (quotation omitted). In these circumstances, the matrix serves only as a "frame of reference." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d).

In sum, the Step Five inquiry requires that an ALJ consider the factors provided in the Medical-Vocational Guidelines and the matrix. Sometimes the ALJ will use a person's actual age, sometimes not. And sometimes the ALJ will apply a specific rule from the matrix but, then again, sometimes not.

B.

Schofield began her trek through the SSA maze when she filed an application for a period of disability and disability benefits. In order to be eligible for both, Schofield needed to show she was disabled "on or before the date [she] was last insured." *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). She alleged in her application that her disability began on August 18, 2013—a few months before the date she was last insured on December 31, 2013. On the day she was last insured, Schofield was 54 years, 8 months, and 1 day old.

The SSA initially denied Schofield's claim for benefits because she was "not disabled under [the SSA's] rules." Schofield then requested the SSA reconsider that denial. The SSA did so and again determined Schofield wasn't disabled. Schofield then requested a hearing before an ALJ.

The ALJ reviewed Schofield's case and also determined she wasn't disabled. Schofield says the ALJ erred at Step Five. At Step Five, the question is whether Schofield could adjust to other work. *See* 20 C.F.R.

4

No. 18-11390

§ 404.1520(a)(4)(v). If the answer is yes, she is not disabled. But if the answer is no, she is disabled. For Schofield, Step Five is all or nothing.

To determine whether Schofield could adjust to other jobs, the ALJ considered Schofield's age, education, residual functional capacity, and work experience. As to age, the ALJ found that Schofield was an "individual closely approaching advanced age." The ALJ did not consider, however, whether Schofield's age placed her in a "borderline situation" because she was "within a few days to a few months" of the "advanced age" category (which starts at 55). *See* 20 C.F.R. § 404.1563(b). But the ALJ did hear testimony from a vocational expert. The vocational expert testified that an individual with Schofield's characteristics would be able to perform several types of jobs, such as a greeter or hostess, a machine tender, and a gate guard. Then the ALJ found Schofield was "not disabled."

Schofield asked the Appeals Council to review the ALJ's decision. She argued the ALJ erred by placing her in a lower age category—an individual closely approaching advanced age—when she was within the borderline (four months) of reaching an *older* category—person of advanced age. She contended that she would've been disabled under the matrix if the ALJ placed her in the older category. The Appeals Council declined review. That denial constituted the agency's final decision. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

After exhausting the exhaustive administrative process, Schofield appealed the SSA's decision to the district court under 42 U.S.C. § 405(g). The district court affirmed. She timely appealed. We review to ensure the SSA's decision is supported by "substantial evidence" and to ensure the SSA applied the proper legal standards. *Higginbotham*, 405 F.3d at 335.

No. 18-11390

II.

On appeal, Schofield challenges the ALJ's performance of Step Five. She says the ALJ did not apply the SSA's rules regarding borderline-age situations and did not provide any explanation for putting her in a lower age category. Therefore, Schofield says, the SSA's decision is not supported by substantial evidence. We agree.

A.

"Substantial evidence" is a term of art used to "describe[] how 'an administrative record is to be judged by a reviewing court.'" *T-Mobile S., LLC v. City of Roswell*, 135 S. Ct. 808, 815 (2015) (quoting *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963)). As the Supreme Court recognizes, "the orderly functioning of the process of [substantial-evidence] review requires that the grounds upon which the administrative agency acted be clearly disclosed." *Ibid.* (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). We cannot exercise this review unless the record advises us "of the considerations underlying the [agency] action . . . ." *Chenery*, 318 U.S. at 94. And this record must be "[c]omplete." *Beaumont, S. L. & W. Ry. Co. v. United States*, 282 U.S. 74, 86 (1930); *accord T-Mobile*, 135 S. Ct. at 815. Just as a lower court must "fully . . . state" all of its reasons, so too must an agency set forth theirs. *Beaumont*, 282 U.S. at 86.

Substantial evidence requires at least, in a word, *evidence. See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). As the Supreme Court has said, an agency must provide "more than a mere scintilla" for its decisions. *Ibid.* (quotation omitted); *see also id.* at 1160 (Gorsuch, J., dissenting) (noting that "clearly mistaken evidence, fake evidence, speculative evidence, and conclusory evidence" are not substantial evidence). While substantial evidence is less than a preponderance of the evidence, the agency's decision must still be supported by "such relevant evidence as a reasonable mind might accept as

No. 18-11390

adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).

But here the ALJ did not provide anything in its decision that we can use to evaluate its consideration of Schofield's borderline age. The regulations governing the ALJ's evaluation of an applicant's age expressly state, "[i]f you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination . . . that you are disabled, *we will consider* whether to use the older age category." 20 C.F.R. § 404.1563(b) (emphasis added). And the ALJ had no discretion to ignore that command. *See, e.g.*, *Morgan v. Colvin*, 803 F.3d 773, 777 (5th Cir. 2015) ("Social Security administrative hearings must follow their own policies."). Yet the ALJ merely noted Schofield's age—and then did nothing to "consider whether to use the older age category." Thus, there is no substantial evidence supporting the ALJ's determination.

## B.

Decisions from our sister circuits support our conclusion. *See, e.g.*, *Phillips v. Astrue*, 671 F.3d 699 (8th Cir. 2012); *Daniels v. Apfel*, 154 F.3d 1129 (10th Cir. 1998); *Kane v. Heckler*, 776 F.2d 1130 (3d Cir. 1985). For instance, the Eighth Circuit has said, "this court still needs to have substantial evidence to support an ALJ's decision." *Phillips*, 671 F.3d at 707. When the record fails to show that the ALJ "has considered whether [an applicant] falls within a borderline category and, if so, whether bumping the [applicant] up is warranted," then the ALJ's decision lacks sufficient "facts and reasons." *Ibid.* (quotation omitted); *see also Lucas v. Barnhart*, 184 F. App'x 204, 208 (3d Cir. 2006) ("Because the record does not contain factual findings relevant to the [borderline-age inquiry] . . . we conclude that the SSA's decision . . . is unsupported by substantial evidence.").

No. 18-11390

Even the SSA's authorities agree with the principle that the ALJ's decision must provide some indication that the ALJ considered the borderline-age category. *See Lockwood v. Comm'r of Social Security*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Bowie v. Comm'r of Social Security*, 539 F.3d 395 (6th Cir. 2008). Although the Sixth Circuit found no "per se" requirement to consider a borderline-age situation, it noted that an "ALJ may need to provide, in cases where the record indicates that use of a higher age category is appropriate, *some indication* that he considered [it]." *Bowie*, 539 F.3d at 399 (emphasis added). Similarly, the Ninth Circuit said an ALJ must show "that she considered whether to use the older age category." *Lockwood*, 616 F.3d at 1072 n.4.

## C.

The SSA says its ALJ performed its legal duty by simply noting Schofield's age and citing the relevant regulatory provision. We disagree for three reasons.

First, substantial-evidence review in this Circuit requires more than mere citation to a regulatory provision. *See Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018) ("A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." (quotation omitted)). Mere citation to the relevant rule, while perhaps helpful to show an agency was aware of its obligations, is not enough to demonstrate the agency *fulfilled* them. What's more, a mere legal citation does not answer the principal question—"whether [Schofield's] borderline situation warranted moving her to the [older] category." *Phillips*, 671 F.3d at 706.

Second, the SSA's mere-citation standard is not enough because the ALJ is an examiner "charged with . . . developing arguments both for and against granting benefits." *Delta Found., Inc. v. United States*, 303 F.3d 551, 561 (5th Cir. 2002) (citing *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (opinion of Thomas,

No. 18-11390

J.)). This is a unique "inquisitorial" role. *Smith v. Berryhill*, 139 S. Ct. 1765, 1779 n.20 (2019). And a court can only fulfill its duty to ensure the ALJ performed its inquisition properly when the record provides its reasoning, not just its Bluebooking. *See Chenery*, 318 U.S. at 94. Substantial evidence review that does not require evidence would leave disability applicants at "the mercy of a bureaucrat's caprice." *Biestek*, 139 S. Ct. at 1163 (Gorsuch, J., dissenting).

Third, and in all events, it is not even clear the ALJ cited the relevant regulation. The ALJ cited 20 C.F.R. § 440.1563, which governs "Age as a vocational factor." The ALJ did not cite the "few days to a few months" provision, which appears in subsection (b). Nor did the ALJ cite the "person closely approaching advanced age" provision, which appears in subsection (d). Much less did the ALJ explain how or why one, the other, or both subsections might apply to Schofield. That's not the stuff of substantial evidence.

D.

Finally, the SSA argues any error the ALJ made was harmless. We disagree. As the SSA itself conceded, a finding that Schofield deserved the benefit of an older age category would have led to a determination she was disabled under Step Five of the matrix. It makes no difference that the ALJ used the rules as a "frame of reference." *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(c). The potentially dispositive impact of the age category determination is sufficient to "cast into doubt . . . the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam).

Would the ALJ have reached the same decision with an older age category? Maybe. But "maybe" is not substantial evidence. That's particularly true here because the ALJ never explained why it chose the lower age category in the first place. *Cf. Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) ("Absent some explanation from the ALJ to the contrary, [the applicant] would appear to have met her burden . . . and therefore her substantial rights were

No. 18-11390

affected by the ALJ's failure to set out the bases for her decision."). Accordingly, we hold that the ALJ's error was not harmless, and the mere citation to Schofield's age and an SSA regulation did not provide substantial evidence to support the ALJ's decision.

III.

"That much is sufficient to decide this case," so we need not decide more. *Biestek*, 139 S. Ct. at 1157. We decline to set out how much evidence would be necessary in future borderline situations. "Th[is] inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Ibid.*; *cf. Richardson v. Perales*, 402 U.S. 389, 410 (1971) (declining to set out a categorical rule regarding the admissibility of medical report evidence in social security disability proceedings).

We also need not consider the decision of the Appeals Council. We've previously held that an Appeals Council decision can be part of the SSA's final decision. *See, e.g.*, *Kneeland v. Berryhill*, 850 F.3d 749, 755–56 (5th Cir. 2017); *Higginbotham*, 405 F.3d at 337. And here, the Appeals Council arguably cured the defect in the ALJ's decision by giving full consideration to Schofield's borderline age. Yet, at oral argument, the SSA's counsel adamantly waived any reliance on the Appeals Council's decision. We typically hold parties—even administrative agencies—to their waivers. *See, e.g.*, *Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417 (5th Cir. 2012). We do so here.

Finally, we do not decide what role, if any, the HALLEX plays in this case. The HALLEX is the Hearings, Appeals, and Litigation Law Manual that provides subregulatory guidance to ALJs adjudicating claims. The parties sharply disagree over how to interpret the HALLEX. But the SSA does not argue its provisions concerning borderline-age situations should be given the force and effect of law. *See Newton*, 209 F.3d at 459 ("While HALLEX does not carry the authority of law, this court has held that where the rights of

10

individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." (quotation omitted)). Nor does the SSA argue that the HALLEX should be given *Auer* deference as an interpretation of the matrix—in whatever "*zombified*" form such deference still exists. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2425 (2019) (Gorsuch, J., concurring in the judgment) (emphasis added); *see also id.* at 2423 (majority op.) ("taking care" to "reinforce the limits of *Auer* deference"); *id.* at 2424 (Roberts, C.J., concurring in part) (noting "the distance between the majority and Justice Gorsuch is not as great as it may initially appear"); *cf. Wash. Dep't of Social & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 389 (2003). We leave those questions for another day.

\* \* \*

The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.