**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-2422**

———————

DONNA ARD,

Plaintiff − Appellant,

v.

MARTIN J. O'MALLEY, Commissioner of Social Security

Defendant – Appellee.

———————

Appeal from the United States District Court for the District of South Carolina, at Anderson.  Jacquelyn Denise Austin, Magistrate Judge.  (8:20−cv−02033−JDA)

———————

Argued:  March 28, 2024                        Decided:  August 1, 2024

———————

Before DIAZ, Chief Judge, QUATTLEBAUM, Circuit Judge, and TRAXLER, Senior Circuit Judge.

———————

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion in which Judge Quattlebaum and Senior Judge Traxler joined.

———————

**ARGUED:**  Audrey Payne, David Ahnen, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  David E. Somers, III, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  James Scott Ballenger, Catherine E. Stetson, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Brian C. O'Donnell, Associate General Counsel, Philadelphia, Pennsylvania, David N. Mervis, Special Assistant United States Attorney, Office of Program Litigation, Office of the

General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

———————

DIAZ, Chief Judge:

When the Social Security Administration adjudicates an application for disability benefits, it places the applicant into one of three age categories and considers age to be an "increasingly limiting factor" in the applicant's ability to work. 20 C.F.R. § 404.1563(a)–(e). But the categories aren't always strictly followed. When an applicant is "within a few days to a few months" of eligibility for a higher age category, the agency may consider whether to treat the applicant as though she's in the higher category. *Id.* § 404.1563(b).

Donna Ard appeals the magistrate judge's order affirming the agency's denial of her application for disability benefits. She contends that remand is necessary because the administrative law judge didn't consider whether to treat her as a fifty-year-old given that she was only six months and seventeen days away from her fiftieth birthday. But because Ard was more than "a few months" away from turning fifty, we affirm.

I.

A.

Ard was born in 1966, and as of the latest date she could be entitled to benefits,[1] she was forty-nine years old—six months and seventeen days shy of her fiftieth birthday. She

---

[1] To qualify for benefits, an applicant must prove that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.101(a), 404.131. An administrative law judge found—and the parties agree—that Ard was last insured on December 31, 2015.

graduated from high school and worked for several years as a medical records clerk before opening a pet grooming and boarding business.

Ard suffers from various health issues, including anemia, chronic pain, depression, post-traumatic stress disorder, and obsessive-compulsive disorder. As a result, she has handed over the operation of her pet grooming business to her husband, though she continues to answer the phones. But despite her limitations, she can still care for her personal hygiene, assist in household chores, go on short shopping trips, and lift up to ten pounds.

In December 2016, Ard applied for disability benefits, alleging that she was disabled as of August 2015. The Social Security Administration denied her application and her request for reconsideration.

Ard then asked for (and received) a hearing before an administrative law judge. The judge denied Ard's application, as we explain in greater detail below. But first we set out a short primer on how the agency handles disability benefits claims.

B.

The Social Security Act provides benefits to qualifying individuals who have a disability, as defined by the Social Security Act. *See* 42 U.S.C. § 423. Relevant here, an applicant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." *Id.* § 423(d)(1)(A).

The Act gives the Commissioner of Social Security the power to issue regulations setting criteria for determining whether an applicant meets this definition. *Id.*

4

§ 423(d)(4)(A).  The agency's regulations set forth a five-step process to determine whether an applicant is disabled.  20 C.F.R § 404.1520(a).

First, the agency considers the applicant's work activity—if the applicant is doing "substantial gainful activity," she isn't disabled.  *Id.* § 404.1520(a)(4)(i).  Second, it considers whether the applicant's impairment is severe—if it's not, she isn't disabled.  *Id.* § 404.1520(a)(4)(ii).  Third, it considers whether the impairment "meets or equals" the requirements of an impairment listed in the regulations, 20 C.F.R. pt. 404, subpt. P, app. 1,—if it does, she is disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, it considers the applicant's "residual functional capacity"[2] to determine whether the applicant can still perform the work she's done before—if she can, she isn't disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, it again considers the applicant's "residual functional capacity," this time in combination with her "age, education, and work experience" to see if she can adjust to a different type of work available in the national economy—if she can, she isn't disabled.  *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(1).

The applicant has the burden at the first four steps, but it shifts to the Commissioner at Step Five to produce evidence that "other jobs exist in the national economy" that the applicant can perform.  *Hancock v. Astrue*, 667 F.3d 470, 472–73 (4th Cir. 2012).

At Step Five, administrative law judges use the Medical-Vocational Guidelines— often called the "Grids"—to guide them.  20 C.F.R. pt. 404, subpt. P, app. 2.  The Grids

---

[2] "Residual functional capacity" refers to the "most" an applicant can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).

are a series of tables that help assess whether there are jobs an applicant can perform despite their strength-based limitations. *See id.* § 200.00(a).

The Grids assume that certain combinations of factors render someone disabled, while other combinations do not. *See, e.g., id.* § 201.00, tbl.1. Once the judge identifies the applicant's residual functioning capacity, age category, education level, and work experience, the Grids direct the judge to the appropriate disability finding. *See, e.g., id.*

But the Grids aren't gospel. If the Grids don't capture all the applicant's circumstances—such as non-strength-based limitations—the administrative law judge uses the Grids only as a "frame of reference," *id.* § 200.00(d), and "full consideration must be given to all of the relevant facts in the case," *id.* § 200.00(e)(2). And, in some cases, the judge may rely on the Grids, but adjust the input factors.

For instance, the Grids categorize applicants into three age categories. A "[y]ounger person" is classified as anyone under age fifty. 20 C.F.R. § 404.1563(c). A "[p]erson closely approaching advanced age" includes those age fifty through fifty-four. *Id.* § 404.1563(d). And a "[p]erson of advanced age" includes those age fifty-five and over. *Id.* § 404.1563(e). The higher the age category, the more weight the Grids give to the applicant's age as affecting her ability to adjust to other work. *See id.* § 404.1563(a) ("[W]e consider advancing age to be an increasingly limiting factor . . . .").

But an administrative law judge can deviate from these categories in a "borderline situation." *Id.* § 404.1563(b). When an applicant is "within a few days to a few months" of reaching the next age category, and when using that higher category would result in a determination that the applicant is disabled, the judge "will consider whether to use the

6

older age category after evaluating the overall impact of all the factors of [the applicant's] case." *Id.*

In practice, this analysis involves a "sliding scale" approach in which the greater the gap between the applicant's actual age and the next category, the more severe the applicant's circumstances must be to justify use of the higher category. *See* Soc. Sec. Admin., Hearings, Appeals, and Litigation Manual ("HALLEX") § I-2-2-42(C)(3).

## C.

Only Step Five is at issue in this appeal. At that step, the administrative law judge determined that Ard had a high school education and the residual functioning capacity to perform sedentary work. The judge also determined that she was 49 years old on the relevant date, "which is defined as a younger individual age 45–49." J.A. 21 (citing 20 C.F.R. § 404.1563).

Plugging these factors into the Grids, the judge noted that using them "as a framework" supported a finding of no disability. J.A. 22. Because these factors resulted in a determination of no disability regardless of her skill level, *see* 20 C.F.R. pt. 404, subpt. P, app. 2, tbl.1. § 201.21–201.22, the judge determined that Ard would be considered not disabled under the Grids.

Finally, because Ard's ability to perform the requirements of sedentary work was "impeded by additional limitations"—her mental health challenges—the judge considered whether these limitations further impact her disability status. J.A. 22. To do that, the judge considered the views of a vocational expert, who testified that there are jobs in the national economy that a person in Ard's circumstances could perform.

7

As a result, the administrative law judge found that Ard wasn't disabled and thus denied benefits.

## D.

Ard appealed that decision to the Social Security Appeals Council, which denied review. She then filed a pro se complaint in the federal district court for the District of South Carolina and consented to proceed before a magistrate judge.

The magistrate judge liberally construed Ard's complaint as challenging the administrative law judge's failure to consider whether Ard should have been moved to a higher age category under the borderline age rule. *Ard v. Comm'r of Soc. Sec. Admin.*, No. 8:20-cv-02033, 2021 WL 6196244, at *9 (D.S.C. Oct. 28, 2021). But the magistrate judge held that the administrative law judge wasn't required to do so because Ard was more than six months away from turning fifty. *Id.* at *9–10.

Ard appeals that order.

## II.

We review the district court's decision de novo but will affirm the administrative law judge's determination if the "[administrative law judge] has applied correct legal standards and the [judge's] factual findings are supported by substantial evidence." *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020) (quoting *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)).

Ard objects to only one aspect of the administrative law judge's analysis at Step Five: Because Ard was only six months and seventeen days from turning fifty, she contends

8

that the judge should have considered whether to treat her as a "person closely approaching advanced age" rather than a "younger person."

Recall that in a "borderline situation," the administrative law judge will "consider" whether to move an applicant to a higher age category "after evaluating the overall impact of all the factors" of the applicant's case. 20 C.F.R. § 404.1563(b). A "borderline situation" arises if two conditions are met. First, the applicant must be "within a few days to a few months of reaching an older age category." *Id.* Second, use of the older age category must result in a finding of disability. Because the Commissioner doesn't dispute the latter condition, *see* Appellee's Br. at 12, we'll assume it's satisfied here.

Our task then is to decide whether six months and seventeen days is "within a few days to a few months" of Ard's next birthday. The magistrate judge said no. Ordinary meaning, Social Security Administration policy manuals, and a consensus of caselaw all suggest that the court was right.

Consider the text of the regulation. When a word isn't defined, we "construe[] it in accord with its ordinary or natural meaning." *Hutchins v. U.S. Dep't of Lab.*, 683 F.3d 75, 77 (4th Cir. 2012) (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)). Though we hardly need resort to dictionaries, they confirm that "few" means a "small number." *Few*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/few [https://perma.cc/BY7J-PTQZ]; *accord Few*, Oxford English Dictionary, https://www.oed.com/dictionary/few_adj?tl=true [https://perma.cc/22RV-899S]. Yet, just what comprises a "small number" depends on context.

9

Ard seeks to provide that context by reference to the sixty-month period making up the next age category—ages fifty through fifty-four. *Cf.* 20 C.F.R. § 404.1563(d). According to Ard, because six-and-a-half months is "a few" out of sixty months, she satisfies the first condition of the borderline age rule. Indeed, Ard's view is that this condition is satisfied whenever the applicant is within a year of the next age category. Oral Arg. 8:00–8:10.

But that's an odd limit for a rule phrased in terms of days and months. Had the Commissioner intended a one-year limit, he "easily could have drafted language to that effect," *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014), by providing that the rule applies when the applicant is "less than one year" from the next age category. That the Commissioner instead used the phrase "within a few days to a few months" implies a shorter period.

Still, in a regulation about age, one year serves as a useful baseline for measuring "a few months." That's because most "ordinary speaker[s] of English," *Julmice v. Garland*, 29 F.4th 206, 208 (4th Cir. 2022) (citation omitted), measure periods greater than a year in terms of years and not months. Thus, our inquiry becomes whether six and a half (roughly the number of months that Ard was shy of her fiftieth birthday) is a "few" or a "small number" out of twelve. We think not.

For one thing, we doubt that most people would say in January that their mid-June birthday was a "few" or a "small number" of months away. Moreover, that the regulation's other baseline is to a "few days" suggests that courts should "round downward, not upward," as "there would be no need to refer to a 'few' months, let alone a 'few days,'" if

10

the "Commission were thinking in terms of periods exceeding a half year." *Vargas v. Colvin*, No. 15-2502, 2017 WL 123436, at *14 (D.N.J. Jan. 11, 2017).

Social Security Administration policy guides support this commonsense understanding. Consider the agency's *Program Operations Manual System*—"the publicly available operating instructions for processing Social Security claims." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 385 (2003). That manual notes that the agency doesn't have a precise definition of "within a few days to a few months," but instructs agency employees to "[c]onsider a few days to a few months to mean a period not to exceed six months." Soc. Sec. Admin., Program Operations Manual System DI 25015.006(B). And the HALLEX manual similarly provides that the agency "[g]enerally . . . considers a few days to a few months to mean a period not to exceed six months." HALLEX § I-2-2-42(B)(1).

Ard makes much of the manual's use of "generally," arguing that this "indicates flexibility and a recognition of cases on both sides of the line." Appellant's Br. at 23–24. We aren't persuaded.

The takeaway from both guides is that six months marks an outer limit for invoking the borderline age rule. If the HALLEX guide were intended to suggest otherwise, it's simply not a compelling interpretation of the phrase "a few months." *Cf. Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (noting that agency interpretations "contained in . . . agency manuals . . . which lack the force of law" are "entitled to respect" under *Skidmore* "only to the extent that those interpretations have the power to persuade" (cleaned up)); *Loper Bright Enters.* v.

11

*Raimondo*, 144 S. Ct. 2244, 2262 (2024) (noting that courts may still under *Skidmore* "seek aid from the interpretations of those responsible for implementing particular statutes").

Unsurprisingly, most district courts have coalesced around a six-month outer limit for invoking the rule. *See, e.g.*, *Pittard v. Berryhill*, No. 2:17cv71, 2018 WL 4219193, at *3–4 (E.D. Va. Sept. 5, 2018); *Divito v. Kijakazi*, 4:20-cv-03698, 2021 WL 4739413, at *7–8 (D.S.C. Oct. 12, 2021); *Jody L.B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-734, 2022 WL 1541461, at *10–11 (N.D.N.Y. May 16, 2022) (enforcing a six-month limit but noting that some district courts in the Second Circuit apply a three-month limit); *Schneider v. Comm'r of Soc. Sec.*, No. 21-4150, 2022 WL 3280109, at *4 (E.D. Pa. Aug. 11, 2022) (noting that in light of agency manuals, "courts nationally have been more willing to accept six months as the outer limit" (emphasis omitted)).

Most circuits have also shied away from applying the rule beyond six months.[3] *Cf. Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012) ("[E]ight months is too distant to be borderline."); *Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (finding seven months not borderline); *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988) (same)*; see also*

---

[3] The Sixth Circuit has twice in unpublished cases considered whether remand was necessary for an administrative law judge to address the borderline age rule where an applicant was "just over" six months from the next age category. *Henry v. Comm'r of Soc. Sec.*, 678 F. App'x 392, 394–95 (6th Cir. 2017) (per curiam); *accord Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 49 (6th Cir. 2018). Although the court in both cases assumed without analysis that the rule might apply, it ultimately decided against remand in each because the factors didn't justify using the higher category. *See Henry*, 678 F. App'x at 395; *Blackburn*, 748 F. App'x 49–50. Because the court offered no analysis of whether the applicants were in fact within "a few months" of the higher age category, we don't find these cases persuasive.

*Fontenot v. Colvin*, 661 F. App'x 274, 277 n.1 (5th Cir. 2016) (per curiam) ("There is no obvious inconsistency between an interpretation of less than six months and language calling for a few days to a few months." (cleaned up)); *Roberts v. Barnhart*, 139 F. App'x 418, 420 (3d Cir. 2005) ("Nor is there any authority extending the benefits of a 'borderline' age determination to persons like Roberts who are within five (5) to six (6) months of their fiftieth birthday.").

Nonetheless, Ard contends that a six-month cut-off flouts the individual assessment required by the Social Security Act and the flexibility inherent in the borderline age rule. We disagree.

For starters, the Supreme Court has upheld using the Grids, as the regulations "afford claimants ample opportunity to present evident relating to their own abilities and to offer evidence that the [Grids] do not apply to them." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). Recall, for instance, that when an applicant has limitations not contemplated by the Grids, an administrative law judge uses them only as a framework. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d). And when the borderline age rule applies, the regulations permit the judge to consider the Grids using a higher age category. 20 C.F.R. § 404.1563(b).

Ard doesn't (and can't) dispute that the administrative law judge weighed the Grids appropriately. The judge explained that even though the Grids suggested a finding of "not disabled," it would rely on the testimony of a vocational expert because Ard's ability to work was "impeded by additional limitations." J.A. 22. The expert identified several jobs that someone in Ard's circumstances could perform, and Ard takes no issue with that

13

testimony or the judge's reliance on it. And Ard conceded at argument that the vocational expert considered Ard's non-exertional limitations. Oral Arg. 5:48–6:32.

Though the borderline age rule offers another measure of flexibility, the "few months" language tempers that flexibility, and we're obligated to honor that regulatory choice. *Cf. Russell*, 856 F.2d at 84 ("Line drawing is reasonable and in accordance with the express language and purpose of these regulations.").

In short, if an applicant is more than "a few months" away from the next category, the rule simply doesn't apply. *Cf.* 20 C.F.R. § 404.1563(b) (explaining that the agency will consider using the higher age category *if* the applicant is "within a few days to a few months" of that category). Although the administrative law judge was required to (and did) use the Grids only as a framework given Ard's non-exertional limitations, she had no reason to *also* consider whether to treat Ard as a "person closely approaching advanced age" because Ard was more than "a few months" away from turning fifty.

The Commissioner's concession that an administrative law judge *may* apply the rule beyond six months doesn't alter our conclusion. Appellee's Br. at 12–13. The Commissioner offers no basis for, or analysis of, this concession, and we aren't bound by it. *See United States v. Rodriguez*, 433 F.3d 411, 414 n.6 (4th Cir. 2006) (stating that the court isn't bound by concession of a legal issue).

We don't doubt that in some cases an administrative law judge may broadly consider the relevance of an applicant's age. Where, as here, an applicant has a combination of exertional and non-exertional limitations that aren't considered by the Grids, the Grids are used only as a "frame of reference" to guide the judge, 20 C.F.R. pt. 404, subpt. P, app. 2

14

§ 200.00(d), who must base her ultimate decision on "full consideration" of "all of the relevant facts in the case," *id.* § 200.00(e)(2).[4] Conducting that inquiry, the judge may well consider the applicant's proximity to the next age category.

Nor do we doubt that the agency, in its discretion, may decline to refer to the Appeals Council cases in which an administrative law judge applies the borderline age rule where the applicant is more than six months away from the next category. 20 C.F.R. § 404.969(a), (b)(2) (noting that the agency "may refer" a decision to the Appeals Council).

But whatever the basis for the Commissioner's concession, the administrative law judge did not err in failing to discuss the applicability of the borderline age rule where Ard was more than "a few months" away from the next age category.

Finally, we acknowledge that some courts have applied the rule when an applicant was close to, but just beyond, six months from reaching the next category. Appellant's Br. at 27–30 (collecting cases). But none of these cases persuasively analyze the meaning of "a few months." And they leave administrative law judges with no guidance about when to consider the borderline age rule for those applicants more than six months away from the next category.

---

[4] This may well operate as the functional equivalent of the borderline age inquiry, which requires an administrative law judge to decide whether to apply the higher age category "after evaluating the overall impact of all the factors" of an applicant's case. 20 C.F.R. § 404.1563(b); *cf. Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1062 (11th Cir. 2021) ("[T]he [administrative law judge] could not have erred in failing to consider the borderline age situation because he did not apply the grids mechanically in this case, but instead relied on [vocational expert] testimony due to Pupo's non-exertional limitations.").

15

In sum, we agree with the district court that the administrative law judge wasn't required to consider the borderline age rule because Ard wasn't within a "few months" of the next age category.[5]  We therefore affirm the district court's judgment.

*AFFIRMED*

---

[5] Because Ard didn't present a borderline situation, we leave for another day the issue of what an administrative law judge must do to "consider" whether to apply the higher category—an issue on which our sister circuits take differing approaches.  *See Schofield v. Saul*, 950 F.3d 315, 321 (5th Cir. 2020) (collecting cases).